JONES, JUDGE:
On January 12,1973, at about 6:00 to 6:30 p.m. the claimant, Ira D. Snyder, was travelling along a narrow road leading from State Route No. 3 to Garrison in Boone County, where he had an appointment with a prospective customer. The claimant resides in Belle, Kanawha County, and is a salesman and installer of fire alarms. He had not travelled the road before, and as he went along he encountered snowy spots and patches of ice. The claimant testified that he drove through an “S” curve as he came to a one-way bridge over Seng Creek in Boone County, at a speed of not more than twenty miles per hour; that he saw ice on the bridge from lights in the yard of Mr. and Mrs. Harold Dean Thompson, and presumably by his own headlights; that he applied his brakes, started sliding, lost control and went over the side of the bridge into the water about six feet below. He further testified that there were no signs warning of the existence of the bridge or that it might freeze before the road surface; that the ice on the bridge was approximately ten inches thick; and that he did not see any guardrails. The front end of the claimant’s car came to a stop in the stream, setting at a rather sharp angle. The claimant climbed out of the water, up the bank and walked to the Thompson house across the road. Mr. Thompson drove the claimant back to his home at Belle. On February 16,1973, the claimant went to Dr. R. A. Lewis of Charleston for a physical examination and x-rays, which revealed cervical strain and a fractured rib. The claimant’s 1971 Comet automobile was damaged to the extent of $988.39, and his total claim, including medical bills and loss of earnings is for damages in the amount of $10,000.00.
Harold Dean Thompson, who described the bridge as being in front of his house, where he had lived for nine or ten years, testified as a witness for the claimant, substantially as follows: The bridge is about twenty feet in length and at the time of the accident had two *167 angle iron guardrails, about three feet high and one and one-half feet apart, on each side; other accidents had occurred at the site of this bridge but no specific details were given nor was there any reference to the condition of the weather or the drivers; referring to the guardrails he testified that “you’d have to knock it off to get into the creek” and “there’s several pieces of fender sticking on them. I guess they did stop somthing.”; the witness’s designation of the point where the claimant’s car left the road makes it difficult to determine whether the vehicle actually reached the bridge or perhaps just the righthand corner of the bridge as he approached (this being in conflict with the claimant’s testimony that the front of his car had reached the center of the bridge); and he did not corroborate the claimant’s contention that ice on the bridge was ten inches thick or that such a layer of ice would render the guardrails useless.
The claimant was travelling after dark over a strange, narrow, country-type road, with occasional patches of snow and ice. He said he was proceeding cautiously because the road was so narrow, and because there was ice on the road. He came out of the “S” curve in sight of the bridge at a speed of about twenty miles per hour and he could see the ice on the bridge. It is unclear whether he applied his brakes before or after reaching the bridge, but when he did so, his rear wheels started to slide and he lost control of his vehicle.
It is well settled law that a user of our highways travels thereon at his own risk and the State does not insure him a safe journey. The West Virginia Supreme Court of Appeals further has held that the placement of warning signs and guardrails is within the discretion of the Department of Highways. Adkins v. Sims, 130 W. Va. 645, 46 S.E. 2d 81. It is a matter of common knowledge that places of danger exist at innumerable points upon our state roads, particularly on our lesser secondary roads. A sign indicating the existence of the bridge in this case would have served no purpose, as the claimant says he already was proceeding cautiously because of the ice on the road. A sign warning that the bridge might freeze before the surface of the road would have told the claimant little or nothing as ice already was frozen on the surface of the road. The respondent had provided guardrails for this bridge. Obviously they were not of the type nor as resistant as guardrails found on interstate highways, primary roads or even most secondary roads, but the Court will assume that the respondent in its discretion considered the angle iron guardrails adequate in the *168 circumstances. The claimant’s own witness testified that it was necessary to knock the guardrail off before anyone could go over the side of the bridge, and there is no evidence in the record that any guardrail was either bent or broken.
Travelling on an icy road is always a hazardous undertaking, and considering the weather conditions and the kind of road the claimant was travelling, he must have recognized that certain risks were involved, and particularly in attempting to approach and cross this narrow, little-used bridge, he must have foreseen some danger. However, we will not further examine the respondent’s contention that the claimant’s damages were the result of his own negligence as that will not be necessary.
In full consideration of all of the facts and circumstances developed in this case, the Court is of opinion to and does hereby hold that the claimant has not proved such a positive neglect of duty by the respondent as would constitute negligence and create a moral obligation on the part of the State to award him damages.
Claim disallowed.